**UNITED STATES of America, Respondent,**

v.

**Marvin RIFE, Petitioner,**

**No. 4805.**

United States District Court, S. D. Ohio, W. D.

May 11, 1981.

Marvin Rife, pro se.

James A. Wilson, Dayton, Ohio, for respondent.

RICE, District Judge.

This matter is before the Court on the motion of Marvin Rife, pro se, for an Order requiring the Court's reporter to transcribe portions of the movant's trial in 1970, in which he was convicted of six counts of possession and passing counterfeit Federal Reserve notes. In the alternative, movant moves for a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202. Attached to the motion as exhibits are several certified copies of court records from Clark County and movant's Affidavit in Support of Request to Proceed in Forma Pauperis.

The trial in the above captioned cause was held on January 19–20, 1970, before Judge Carl Weinman. Movant was found guilty by a jury on all six counts of the indictment and was thereafter sentenced to two years on count I, and to two years on each of counts II–VI. The sentences in counts II–VI were to, and apparently did, run concurrently with each other, and concurrently with the sentences for count I. Movant has served the above sentences in full and is presently an inmate at the Southern Ohio Correctional Facility, Lucasville, Ohio, on an unspecified and unrelated conviction.

Specifically, movant seeks transcription of the direct and cross-examination of himself at the 1970 trial, relating to his prior convictions in 1951, 1957, and 1960. He alleges that defense counsel did not inform the trial judge in the 1970 proceedings that he was not represented by counsel during the proceedings that led to his prior convictions; that he was not advised of his constitutional right to appointment of counsel in the prior proceedings; and that he did not waive said right to counsel therein. Consequently, because the proceedings which led to his convictions in the prior proceedings were constitutionally infirmed, he alleges that inquiry into those prior convictions by the prosecution in the 1970 trial, for the purpose of impeaching his credibility " 'May' have so prejudiced the jury that he was denied his right to due process in the 1970 trial." (Motion at 1).

Movant also seeks an order remanding him to this Court with appointment of effective counsel for an evidentiary hearing which, he states, "in effect will do nothing more than give Petitioner an opportunity to remove the stigma of that [1970] judgment and sentence long fully served." (Memorandum at 4).

Exhibit A is a certified copy of the docket entries in *In the matter of Marvin Rife*, Clark County Probate Court, Juvenile Division (1951). An entry was filed on April 16,

1951, adjudging movant delinquent and ordering that he be committed to the permanent care of the Boys' Industrial School, Lancaster, Ohio.

Exhibit B contains an Entry from the Clark County Court of Common Pleas bearing the date of January 6, 1958.[1] Therein, movant was convicted on a plea of guilty, after withdrawing a plea of not guilty, of two counts of Burglary in violation of section 2907.10, Ohio Rev.Code. He was sentenced to an indeterminate sentence.

Exhibit C contains certified copies of records from the Clark County Court of Common Pleas relating to movant's conviction in 1960, for uttering and publishing in violation of section 2913.01, Ohio Rev.Code. Movant pleaded guilty to the above charge and was sentenced for an indeterminate period.

There is nothing in the records before the Court, relating to the 1951 or 1957 convictions, indicating that the movant was represented by counsel in either of those proceedings. The records are also silent as to whether he was apprised of his right to counsel or that he had waived his right thereto.

Exhibit C(b) is a judgment entry, the date of which is blurred, relating to movant's 1960 conviction. This entry states that "By written decision of February 24, 1976, this Court ruled that Defendant was entitled to relief under his petition to vacate judgment under the provisions of section 2953.21 [Petition to vacate or set aside sentence], Revised Code." The Court granted Defendant a new trial:

> "[O]n the basis that the Defendant voluntarily entered a plea of guilty without counsel to the Indictment . . . but that at the time of entering said plea of guilty no written record was taken of said proceedings and this Court . . . had no recollection of what was said to the Defendant about his right to Court appointed counsel at County expense."

Thus, Exhibit C(b) shows that the Clark County Court of Common Pleas vacated movant's 1960 judgment of conviction, in 1976, either because movant was not represented by counsel or because there was no evidence in the record to establish that he had been told of his right to appointed counsel and had voluntarily waived same.

## SUMMARY OF CONCLUSIONS

1. Despite the manner in which the motion is fashioned, the relief sought by movant argues in favor of treating the motion as a petition or application for a writ of error *coram nobis*, under the "All Writs" statute, 28 U.S.C. § 1651.

   It cannot be treated as a § 2255 motion because the movant is no longer in federal custody for the sentence imposed in 1970. It cannot be treated as a § 2254 motion because movant is not claiming to be in state custody in violation of the U. S. Constitution or any federal law.

   Failure to style the motion as an application for writ of error *coram nobis* is not fatal. There is authority for treating it as such, especially where, as here, the movant is an incarcerated indigent, his sentence has been fully served, and he is seeking relief to "achieve justice." *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1953).

2. If movant's allegations regarding the 1960 conviction are proven, that is, that he was questioned about this prior felony conviction during the 1970 trial for impeachment purposes, he is almost certainly entitled to relief. The judgment entry, Exhibit C(b), vacating judgment and sentence on the 1960 conviction, shows that there was a constitutional infirmity therein.

   The Supreme Court has held that the admission of a prior criminal conviction which is constitutionally infirmed

---

1. The 1957 conviction, referred to by movant, actually resulted from a plea of guilty entered on January 6, 1958. For purposes of this deci-sion, the Court will continue to refer to this conviction as "the 1957 conviction."

under the standards of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 is inherently prejudicial, *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and that an infirmed prior conviction cannot be used to impeach an accused's credibility. *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

3. As to the 1951 and 1957 convictions, the Court cannot presume waiver from a silent record.

"The record must show or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

The exhibits filed with respect to the 1951 judgment of delinquency and the 1957 felony conviction are silent as to whether the movant was represented by counsel or whether he waived his right thereto; thus, waiver of counsel cannot be presumed. If, as movant alleges, he was questioned as to those convictions, then the authorities referred to in # 2, *supra,* are likewise applicable.

4. Final disposition of this matter cannot be had at present.

## DISCUSSION

### A. WRIT OF ERROR CORAM NOBIS

The seminal case establishing the continued vitality of the common law writ of error *coram nobis* in criminal proceedings is *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1953). Therein, respondent had pleaded guilty in 1939 to a federal charge and was given a four year sentence, which he served. In 1950, he was convicted by a New York court on a state charge and was sentenced to a longer term because of his prior federal conviction. *Id.* at 503–04, 74 S.Ct. at 248–49.

Respondent filed an application for a writ of error *coram nobis* and gave notice of a motion for the writ in the district court where he had received his first sentence. Both the application and the motion sought an order voiding the judgment of conviction rendered in 1939. *Id.* at 504, 74 S.Ct. at 248.

The district court treated the proceeding as a motion under 28 U.S.C. § 2255. Relief was denied on the basis that the court had no jurisdiction because the respondent was no longer in custody under the sentence. The Court of Appeals reversed, holding, "that 28 U.S.C. § 2255 did not supersede 'all other remedies which could be invoked in the nature of the common law writ of *coram nobis.*'" *Id.* The question presented for Supreme Court review was:

"[W]hether a United States District Court has power to vacate its judgment of conviction and sentence after the expiration of the full term of service." *Id.* at 503, 74 S.Ct. at 248.

First, the Court noted uncertainty in the respondent's choice of remedies. The papers were labeled as though they sought the common law writ but the notice of the motion indicated that the respondent sought an order voiding the judgment. *Id.* at 505, 74 S.Ct. at 249. The Court stated:

"In behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief. [footnote omitted] We think a belated effort to set aside the conviction and sentence in the federal criminal case is shown. We therefore treat the record as adequately presenting a motion in the nature of a writ of error *coram nobis* enabling the trial court to properly exercise its jurisdiction. [citation omitted]." *Id.* The Court also concludes that Rule 60(b), Fed.R.Civ.Pro., which expressly abolishes the writ in civil cases is inapplicable. *Id.* at 505–06 n. 4, 74 S.Ct. at 249.

The Court then discussed the source of the courts' power to grant the relief sought. It stated, "if it exists, [it] must come from the all-writs section of the Judicial Code." *Id.* at 506, 74 S.Ct. at 250. The section

referred to is 28 U.S.C. § 1651, which provides in pertinent part: "(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." It then addressed the question "whether the all-writs section gives federal courts power to employ *coram nobis*." *Id.* at 507, 74 S.Ct. at 250.

The Court examined the writ as it existed at common law and noted that it had had continuous but limited use in the states. *Id.* The Court acknowledged its previous refusal to address the issue squarely presented in this case because it had not previously been necessary. *Id.* at 508–09, 74 S.Ct. at 250–51. It noted that it [the writ] had been used in other federal courts and that "[t]here are few cases where the power to consider a motion for *coram nobis* relief has been denied." *Id.* at 510, 74 S.Ct. at 252 [footnote omitted].

The Court rejected a contention that 28 U.S.C. § 2255 "should be construed to cover the entire field of remedies in the nature of *coram nobis* in federal courts." *Id.* The Court stated, "We do not think that the enactment of § 2255 is a bar to this motion, and *we hold that the District Court has power to grant such a motion.*" *Id.* at 511, 74 S.Ct. at 252 (emphasis added).

The Court then discussed the circumstances under which such a motion should be granted. "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only *under circumstances compelling such action to achieve justice.*" *Id.* (emphasis added).

The Court then applied the foregoing to respondent's allegations. Respondent alleged that at the time of his 1939 conviction he was 19 years old, without knowledge of law and not advised of his rights. "The trial record apparently shows Morgan was without counsel." *Id.* The Court further observed that the record was devoid of explanation for why respondent was not represented and that no details of the hearing

at which respondent entered his plea were given. *Id.* at 511–12, 74 S.Ct. at 252–53. Because of the state of the record, the Court determined that it must rely on the respondent's allegations.

The Court reaffirmed its previous position "that *coram nobis* included errors 'of the most fundamental character,'" and that "a federal trial without competent and intelligent waiver of counsel bars a conviction ...." –*Id.* at 512, 74 S.Ct. at 253. *See United States v. Mayer,* 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129 (1914); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Emphasizing that the "absence of a showing of waiver from the record does not of itself invalidate the judgment;" that there is a presumption of correctness of the proceedings, and that the burden is on the accused to show otherwise, the Court concluded that "this motion in the nature of the extraordinary writ of error *coram nobis* must be heard by the federal trial court." *Id.* at 512, 74 S.Ct. at 253 [footnote omitted].

The Court concluded by identifying important policy considerations which favored the result reached.

"Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. [footnote omitted] As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid." *Id.* at 512–13, 74 S.Ct. at 253.

Although not on point with the case at bar, it should be noted that the Sixth Circuit has embraced and applied the principles announced in *Morgan* on several occasions. *See, e. g., Dunn v. United States,* 238 F.2d 908 (6th Cir. 1956), *cert. denied,* 353 U.S. 939, 77 S.Ct. 818, 1 L.Ed.2d 762 (denial of writ affirmed because no facts were alleged that bore upon the regularity of trial and the validity of the sentence); *United States v. Norman,* 391 F.2d 212 (6th Cir.), *cert. denied,* 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163 (1968) (denial of writ affirmed

because the indictment properly charged appellant with the offense of which he was convicted); *Wallace v. United States*, 377 F.2d 284 (6th Cir. 1967) (denial of writ affirmed because the trial court's conclusions were based on evidence of the procedural routine of the then presiding judge with respect to appointed counsel and appellant failed to rebut the presumption of regularity).

■ *Morgan* establishes the federal courts' power to grant relief in the nature of a writ of error *coram nobis* in criminal cases, under 28 U.S.C. § 1651. In a footnote to that decision, not previously mentioned, the Court discussed writs of habeas corpus "as an essential remedy to safeguard a citizen against imprisonment ... in violation of his constitutional rights." 346 U.S. at 505 n. 3, 74 S.Ct. at 249.

> "To make this protection effective for unlettered prisoners without friends or funds, federal courts have long disregarded legalistic requirements in examining applications for the writ and judged the papers by the simple statutory test of whether facts are alleged that entitle the applicant to relief." *Id.*

The implication is that this same approach would be proper for motions in the nature of writ of error *coram nobis*. This is compatible with the Court's recognition of the papers in *Morgan* as a motion in the nature of writ of error *coram nobis* even though there was an uncertainty in the respondent's choice of remedy.

■ Looking at the motion and memorandum filed in the case at bar, it too indicates an uncertainty in choice of remedy. The motion calls for an order requiring the production of portions of the transcript in his 1970 trial, or in the alternative for declaratory judgment. In essence, he is seeking a vacation of judgment and sentence. He, like Morgan, is incarcerated on a state conviction. He is, as evidenced by his affidavit in support of request to proceed in forma pauperis, an indigent. The memorandum seems to satisfy the test stated, *supra*, that the facts alleged, if proven, would entitle him to relief. Taking all

these factors together, it would seem appropriate to treat his Motion for Issuance of Alternative Order as a motion in the nature of writ of *coram nobis*.

The next task is to consider the merits of his motion.

## II. MOVANT'S ALLEGATIONS OF CONSTITUTIONAL INFIRMITY IN HIS 1970 TRIAL

■ Keeping in mind that the extraordinary remedy of writ of error *coram nobis* should issue "only under circumstances compelling such action to achieve justice," including "errors of the most fundamental character," the movant's allegations can now be considered.

Movant alleges that he was questioned during direct and cross-examination in his 1970 trial about his prior convictions in 1951, 1957, and 1960. He alleges that he was not represented by counsel in those prior proceedings and that he did not waive his right to counsel therein. Consequently, he alleges that inquiry into those prior convictions in his 1970 trial deprived him of due process.

His allegations with respect to lack of counsel and lack of waiver thereto in the 1960 proceedings is substantiated by Exhibit C(b), the judgment entry of the Clark County Court of Common Pleas vacating judgment and sentence for that conviction. If the movant's contention that inquiry into that prior conviction at his 1970 trial is well-founded, then the relief herein sought should be granted on that ground alone. Movant's allegations regarding his 1951 and 1957 convictions need not even be considered. This being the case, the discussion which follows will first address itself to the 1960 conviction and then to the remaining allegations concerning the 1951 and 1957 convictions.

One of the first cases in which the Supreme Court discussed the admission of constitutionally infirmed prior convictions is *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). Burgett was convicted of assault with malice aforethought

with intent to murder and repetition of offense. The maximum penalty for the first conviction was 25 years; minimum was set at two years. The first count of the indictment contained allegations which had led to the charge; counts ii–v contained allegations that the defendant had incurred four previous felony convictions. The court counts relating to the prior convictions were included when the indictment was read to the jury at the commencement of trial.

At trial, in the jury's presence, the state offered into evidence a certified copy of one of defendant's Tennessee convictions, which read in part, "Came the Assistant Attorney General for the State and the Defendant in proper person and without Counsel." *Id.* at 112, 88 S.Ct. at 260. Defense counsel objected because the judgment on its face showed that defendant was not represented by counsel in violation of the Fourteenth Amendment and there was no indication of waiver in the record. The court reserved ruling. *Id.*

Thereafter, the state offered a second version of the same conviction which "stated that petitioner had appeared 'in proper person' but did not contain additional words 'without counsel.'" *Id.* This version also contained language concerning "argument of counsel" but it was not clear whether counsel was singular or plural. *Id.* The court again reserved ruling but thereafter, out of the presence of the jury, sustained the objection to the first version, and overruled objection as to the second. The Court also instructed the jury "not to consider the prior offenses for any purpose whatsoever in arriving at the verdict." *Id.* at 113, 88 S.Ct. at 260. The jury found the defendant guilty and fixed punishment at ten years. The Texas Court of Criminal Appeals affirmed the conviction, holding that the defendant had not suffered an enhanced sentence and that there was no error since the court had instructed the jury to disregard the prior offenses. *Id.*

The Supreme Court reversed. The Court held:

"The admission of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon v. Wainwright* is inherently prejudicial and we are unable to say that the instruction to disregard it [footnote omitted] made the constitutional error 'harmless beyond a reasonable doubt' . . . ."

*Id.* at 115, 88 S.Ct. at 262.

The Court's starting point was *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) which "establishes the rule that the right to counsel guaranteed by the Sixth Amendment was applicable to the States by virtue of the Fourteenth, making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one . . . ." *Burgett, supra,* at 114, 88 S.Ct. at 261. The Court stated that the certified records of the Tennessee conviction "raise a presumption that petitioner was deprived his right to counsel . . . and therefore his conviction was void." *Id.* at 114, 88 S.Ct. at 261. Relying on *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the Court reaffirmed the proposition that "presuming waiver of counsel from a silent record is impermissible." *Burgett, supra,* at 114, 88 S.Ct. at 262.

The Court reasoned:

"To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." *Id.* at 114–15, 88 S.Ct. at 262.

The Court, therefore, concluded that "petitioner's right to counsel, a 'specific federal right,' is being denied anew. This Court cannot permit such a result unless *Gideon v. Wainwright* is to suffer serious erosion." *Id.* at 116, 88 S.Ct. at 262.

■ *Burgett,* because of its facts, clearly supports the proposition that prior convictions which are constitutionally infirmed cannot be used in a subsequent proceeding for the purpose of enhancing a sentence.

In 1972, the Court made equally clear that such prior convictions could not be used for the purpose of impeaching the credibility of the accused. *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). The question presented in *Loper* seems to be the precise question presented to the Court in the case at bar, that is:

"Does the use of prior, void convictions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case?"

*Loper, supra*, at 480, 92 S.Ct. at 1018.

The Court explained that the prior convictions involved "were used . . . simply in an effort to convict Loper by blackening his character and thus damaging his general credibility in the eyes of the jury" and acknowledged that a "record of prior convictions may actually do more than simply impeach a defendant's credibility . . . ." *Id.* at 482 n. 11, 92 S.Ct. at 1018.

In arriving at its conclusions, the Court set forth the following premise:

"Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law."

*Id.* at 483, 92 S.Ct. at 1019.

Concluding that *Burgett* ought not be forsaken, the Court adopted the conclusions of the First Circuit Court of Appeals in *Gilday v. Scafati*, 428 F.2d 1027, 1029:

"We conclude that the *Burgett* rule against the use of uncounseled convictions 'to prove guilt' was intended to prohibit their use 'to impeach credibility,' for the obvious purpose and likely effect of impeaching the defendant's credibility is to imply, if not prove, guilt . . . we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when direct proof of guilt." *Id.*

■ Applying the foregoing with respect to movant's allegations as to the 1960 conviction, the only reasonable conclusion is that inquiry into that conviction during the 1970 trial, for impeachment purposes, denied the movant of due process. *Burgett* establishes the general principle, growing from *Gideon*, and *Loper* expressly extends that principle to situations where the prior conviction is used for impeachment purposes. If the record shows that the 1960 conviction was introduced into evidence by way of movant's testimony, then these authorities require the conclusion that movant was denied his Sixth Amendment right anew in the 1970 trial, and that the resulting conviction was constitutionally infirmed. Again, since that conviction of 1960 was vacated on the very grounds presented in *Burgett* and *Loper*, it would seem that all movant need show to meet his burden is that the conviction was, in fact, used for the purpose alleged.

■ Issuance of a writ of error *coram nobis* to remedy this defect also seems proper. Deprivation of the Sixth Amendment right to counsel and of due process are certainly of a fundamental character. Vacation of the judgment of conviction and sentence would "achieve justice" for the movant. Thus, it would seem to follow that the movant has presented allegations that would justify issuance of the writ.

Movant's allegations with regard to the 1951 judgment of delinquency and the 1957 felony conviction also seem well-founded, and lend additional support for further action to be taken on this matter. Since neither of those judgments has been *vacated*, the movant may have different proof problems but those problems are not currently before the Court. Of course, since the 1960 conviction was vacated, the Court might well find sufficient justification for issuance of a writ of error *coram nobis* without even considering movant's allegations regarding these other two prior convictions. However, a brief discussion of those allegations is in order.

Perhaps an appropriate starting point in this discussion in *Carnley v. Cochran*, 369

U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), in which the Supreme Court held that waiver of counsel cannot be presumed from a silent record. The Court stated:

> "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything else is not waiver.
>
> .  .  .  .  .
>
> Where . . . the constitutional infirmity of trial without counsel is manifest, and there is not even an allegation, much less a showing of affirmative waiver, the accused is entitled to relief from his unconstitutional conviction."

*Id.* at 516–17, 82 S.Ct. at 890. *Carnley* is reaffirmed in *Burgett, supra,* at 114, 88 S.Ct. at 261.

■ In the case under consideration, the court records accompanying the motion are silent on the matter of waiver. The docket entries in *In The Matter of Marvin Rife* (Exhibit A) show only that the movant had a hearing, after which he was adjudged delinquent, and ordered to the permanent care of the Boys' Industrial School, in Lancaster, Ohio. Likewise, there is no mention of counsel or waiver of same in the entry filed by the Clark County Court of Common Pleas, of January 8, 1958 (Exhibit B). The Court granted leave for movant to withdraw his plea of not guilty and enter a plea of guilty; the Court stated that it inquired of defendant "if he had anything to say why judgment should not be pronounced against him," but the entry is devoid of any discussion of the movant's right to counsel or waiver. Even acknowledging that the entire record in these matters may show otherwise, this Court cannot presume waiver from the record currently before it.

That the movant is entitled to the relief sought as regards the 1957 conviction is clear from the authorities cited above, *if his allegations are proven to be true.*[2] That result is less clear with respect to the 1951 judgment of delinquency. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), established the right of a juvenile to be represented by counsel in delinquency proceedings that may result in a loss of liberty, as occurred when movant was adjudged delinquent. Whether a pre-*Gault* judgment of delinquency, where the accused was not represented and did not waive his right thereto, may be used in a subsequent crimi-

2. That these allegations may well be true (or impossible to prove to the contrary) is suggested by a filing made by the petitioner, subsequent to the pleading addressed herein. On November 20, 1980, the movant filed an application for habeas corpus relief under 28 U.S.C. 2254. That application raised the same objections to his 1970 conviction as have been addressed herein, to wit: the denial of a fair and impartial trial by the introduction of 1951, 1957 and 1960 constitutionally infirmed convictions. Said filing of November 20, 1980, contains noncertified pleadings from the Court of Common Pleas of Clark County, Ohio, indicating that the Defendant *did* attempt to follow his state remedy to vacate and set aside sentence (Ohio Revised Code Section 2953.21, et seq.), in order to attempt to vacate his 1958 conviction on the basis of denial of his right to counsel. Clark County Court of Common Pleas Judge Lorig denied the motion in a one-half page decision indicating that "the court has examined the files and records pertaining to the proceedings against the petitioner. The court finds upon the facts that all procedural requirements and safeguards of the defendant's rights were met, etc." No mention is made of the defendant's alleged denial of the right to counsel. It is difficult to see what records Judge Lorig had in mind in view of the June 20, 1979, letter from the Clark County Clerk of Courts, to the movant herein, in which the Clerk's Office indicated ". . . we do not have the original transcript of proceedings [referring to the January 6, 1958 proceedings]." This letter simply confirms a previous letter from the Clerk of Courts Office dated June 14, 1979, in which the writer indicated that "Judge Lorig's court reporter told me that all transcripts of proceedings were distroyed [sic] every 7 years. If you want a transcript of any proceedings, we would not have it unless there was one filed in the court of appeals. (in this case there was no appeal in 1958) Also we have no record of an appointment of counsel. The judge's docket does not have any records of an attorney being present with you."

It thus appears that it will be impossible for the Government to show that the Plaintiff affirmatively waived his right to counsel. Since waiver cannot be presumed from a silent record, this Court would assume that the ultimate conclusion on the 1957 conviction will be that it is, in fact, constitutionally infirmed.

nal proceeding seems to be a question of first impression. *Gault* was not given the same retroactive effect of *Gideon*. That might argue against vacating a subsequent criminal judgment *only* on the basis that a prior juvenile adjudication is used in a subsequent case.

On the other hand, the Supreme Court has indicated that *Burgett, supra*, has retroactive application without regard to whether the use of the prior conviction was made prior to or after *Gideon*. *See Bates v. Nelson*, 393 U.S. 16, 89 S.Ct. 50, 21 L.Ed.2d 21 (1968); *Loper v. Beto*, 405 U.S. 473, n. 13, 92 S.Ct. 1014, 1020 n. 13, 31 L.Ed.2d 374 (1972). It is a broad leap, but this may indicate the Supreme Court's intent to discourage any use of prior convictions or judgments where the accused has been denied his right to counsel. On that basis, the use of movant's 1951 judgment might be sufficient to warrant the relief sought.

Appended to the habeas corpus petition filing of November 20, 1980, is a file-stamped, albeit uncertified, entry of the Clark County, Ohio, Common Pleas Court, Probate and Juvenile Division, dated February 14, 1980. Said entry reflects the fact that the court would allow the Juvenile Court conviction of 1951 to be *expunged* from the defendant's record, upon the petitioner's petition to vacate judgment and set aside sentence upon the grounds of denial of the right to counsel. It is to be noted that this entry of expungement accomplished, as a practical matter, the same effect as a vacation of said judgment of conviction. However, the fact remains that said conviction has not been vacated, although, presumably, the Court would do so upon a further, more properly articulated request. (The trial judge did say that "the court has no quarrel with the argument of the defendant" [seeking vacation of entry of conviction]) Should said conviction be vacated, it would be clear that the 1951 conviction would stand upon the same footing as that occurring in 1960, to wit: a vacated judgment of conviction, upon the grounds of constitutional infirmity, which was used during the 1970 trial in this Court to attack the Defendant's credibility. Since the 1951 conviction would be vacated upon the very grounds presented in *Burgett* and *Loper*, it would seem that all movant need show to meet his burden is that the conviction was, in fact, used for the purpose alleged.

In any event, it appears that resolution of the motion before the Court will not be grounded *solely* on the use of the 1951 judgment. There is, therefore, no need to quibble with the 1951 conviction at this time.

A final comment is in order on the matter of presumptions. When considering motions in the nature of writs of error *coram nobis*, there is a presumption of regularity in the proceedings under attack. *United States v. Morgan, supra*. However, as discussed above, a presumption of waiver of counsel is impermissible from a silent record. Thus, when the issue concerns the Sixth Amendment right to counsel, and whether that right was intelligently and understandingly waived, a presumption of regularity ought not be recognized. This would violate *Carnley, supra*, and *Burgett, supra*.

## III. CONCLUSIONS

The Court concludes that the motion pending is in the nature of a writ of coram nobis, and that the movant is entitled to an opportunity to prove the allegations contained therein.

The Court grants movant's request to proceed on this matter in forma pauperis.

This Court hereby issues an Order for the United States Government to Show Cause why the Writ of Coram Nobis as prayed for should not issue and why, accordingly, the movant's 1970 conviction in this Court should not be vacated. This Show Cause Order is returnable, in the form of a written submission by the Government, which may include the furnishing of transcripts (should they, by some miracle, prove to be extant) from the court proceedings leading up to and including the 1951 and 1957 convictions, not later than July 1, 1981.

Ordering that the pertinent portions of the transcript of the 1970 trial in this Court be produced may be somewhat premature at this point. If the Government does not respond or does not choose to oppose the motion, ordering the transcript probably would not be necessary. Taking the movant's allegations as true, and considering the record currently before the Court, would suffice for issuance of the writ.